# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERCEDES MORALES DE ROMERO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No.: 1:17-cv-01508 - JLT<br><br>ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF MERCEDES MORALES DE ROMERO AND AGAINST DEFENDANT NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY |

Mercedes Morales De Romero asserts she is entitled to a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff argues the administrative law judge erred in relying upon the testimony of a vocational expert to find Plaintiff can perform the job requirements of her past relevant work and other work in the national economy. Because the ALJ failed to support his findings regarding Plaintiff's language abilities and did not address apparent conflicts between two vocational resources, the decision is **REMANDED** for further proceedings.

## **PROCEDURAL HISTORY**

Plaintiff filed her application for benefits on January 4, 2013, alleging disability beginning on December 29, 2010. (Doc. 9-7 at 5-6) The Social Security Administration denied Plaintiff's applications at both the initial level and upon reconsideration. (*See generally* Doc. 9-4) Plaintiff requested a hearing, which was held by an ALJ on August 20, 2015. (Doc. 9-3 at 29) After the hearing, the ALJ ordered a neurological consultative examination. (*See id.* at 75-76) Plaintiff then requested a

1

supplemental hearing, which was held on March 1, 2016. (*Id.*) At each hearing, the ALJ also elicited testimony from a vocational expert. (*See id.* at 67-70, 81-86)

The ALJ determined Plaintiff was not disabled and issued an order denying her application for benefits on August 3, 2016. (Doc. 9-3 at 29-40) The Appeals Council denied Plaintiff's request for review of the decision on September 18, 2017. (*Id.* at 2-5) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounois v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## **ADMINISTRATIVE DETERMINATION**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity ("RFC") to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

**A.    Work History Report**

Plaintiff submitted a "Work History Report" to the Social Security Administration, detailing her work for laundry and fruit packing businesses. (Doc. 9-8 at 14-21) She indicated that she worked for Delmonte, a fruit packing business, from June 1992 to September 2000. (*Id.* at 15) Plaintiff then worked for three different laundry companies, beginning in June 2000. (*Id.*) She had a break in her employment history between August 2005 and July 2007, and last worked in December 2010. (*Id.*)

She indicated that for each laundry company, including AmeriPride, she folded towels and put sheets in an iron. (Doc. 9-8 at 15-17) Plaintiff estimated the towel bundles weighed 20 pounds, which she carried ten feet. (*Id.* at 15, 16) She reported she did this "8 hours a day," and she was required to stand for the 8 hours that she worked. (*Id.*) Plaintiff also indicated the jobs required her to stoop, crouch, and crawl for a significant amount of time.[1]  (*Id.*)

Plaintiff also indicated that while working "packing [and] sorting fruit," she was required to stand for eight hours a day. (Doc. 9-8 at 18) She did not indicate that she could sit while working. (*Id.*)

---

[1] Specifically, Plaintiff indicated that she had to stoop and crouch for five hours; and crawl, handle, and reach for eight hours. (Doc. 9-8 at 15)

3

1  **B.     Plaintiff's Administrative Hearing Testimony**

2  On August 20, 2015, Plaintiff testified before the ALJ with the assistance of a Spanish language

3  interpreter. (Doc. 9-3 at 48) She stated that she had a ninth-grade education from attending school in

4  Mexico. (*Id.* at 52) Plaintiff reported she could read and write in Spanish but could not read and write

5  in English. (*Id.*) Plaintiff said she was unable to speak or understand English. (*Id.*) The ALJ observed

6  that one of Plaintiff's disability forms when she applied for benefits "was completed in English and

7  signed by [Plaintiff]." (*Id.* at 53) The ALJ questioned whether the signature indicated Plaintiff was the

8  one who completed the forms, to which Plaintiff responded that her son helped her. (*Id.*) The ALJ then

9  stated: "It looks like maybe your son completed both of them and you just signed the one. Is that

10 correct?" (*Id.*) Plaintiff answered, "Yes." (*Id.*)

11  She reported that her work history included "sorting dry fruit and packing it" for Premier Valley

12 Foods; "working in a washer," where she ironed table clothes, linens, and sheets;" packing fruit for

13 Angelica Textiles; and washing and ironing for AmeriPride Services. (Doc. 9-3 at 54-55) She said that

14 while working at AmeriPride, she sometimes had to read orders, which were in English. (*Id.* at 56)

15 Plaintiff testified she "knew the name of each product," so she knew where to place them. (*Id.*)

16  Plaintiff said that while working at AmeriPride, she was required to lift "between 50 and 100

17 pounds." (Doc. 9-3 at 56) She also was required to lift about 50 pounds a packer for Angelica Textile

18 Services. (*Id.*) The position of sorting and packing dry fruit at Premier Valley Foods required her to

19 lift "[m]aybe ten pounds." (*Id.* at 57) Similarly, Plaintiff estimated she had to lift ten or fifteen pounds

20 while packing fruit for Angelica Textiles. (*Id.*)

21 **C.     Testimony from Vocational Experts**

22  Thomas Dachelet, a vocational expert, testified after Plaintiff on August 20, 2015. (*See* Doc. 9-3

23 at 38, 67) Mr. Dachelet indicated that he read Plaintiff's file regarding her work history and listened to

24 her testimony. (*Id.* at 67) He characterized Plaintiff's past relevant work— using the *Dictionary of*

25 *Occupational Titles*[2]— as laundry worker II, DOT 361.685-018, which was classified as "medium and

---

[2] The *Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The *DOT* classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1)

unskilled work." (*Id.*) According to Mr. Dachelet, based upon Plaintiff's testimony, she performed the position at both the medium and heavy exertion levels. (*Id.*) In addition, he testified that Plaintiff performed a "combination" position of sorter and packer, DOT 529.687-186 and DOT 920.687-134. (*Id.*) Mr. Dachelet stated that under the *Dictionary of Occupational Titles,* the sorter position was "light and unskilled." (*Id.*) In addition, he reported the packer position was "[i]dentified in the *Dictionary* as medium and unskilled, but testimony elicited puts [the work] in combination performed at light." (*Id.*)

The ALJ requested Mr. Dachelet consider "a hypothetical individual of the claimant's age and education with the past relevant work… described." (Doc. 9-3 at 67) The ALJ instructed Mr. Dachelet:

> Further assume this individual is capable of occasionally lifting and carrying up to 50 pounds and frequently 25, stand and/or walk for six hours, and sit for eight hours in an eight hour day with normal breaks, capable of occasional balancing, stooping, kneeling, crouching, crawling, and climbing, frequent gross manipulation with the left upper extremities, no work at extremely cold and/or damp environment.

(*Id.* at 67-68) Mr. Dachelet testified such an individual would be able to perform Plaintiff's past relevant work as laundry worker II, as defined at the medium exertion level, and "[t]he combination of sorter and packer." (*Id.*) He explained that "the laundry worker job at heavy" would not be available… as performed." (*Id.*) Mr. Dachelet opined "other medium, unskilled jobs" would be available, including: hand bagger, DOT 920.687-014; package sealer machine operator, DOT 920.684.074; and laundry checker, DOT 369.687-1014. (*Id.*) Mr. Dachelet testified that his testimony was consistent with the *Dictionary of Occupational Titles*. (*Id.* at 70)

The ALJ held a supplemental hearing on March 1, 2016, during which the ALJ obtained testimony from a second vocational expert, Steven Schmidt. (*See* Doc. 9-3 at 75, 81) Mr. Schmidt reported he reviewed the file with Plaintiff's work history. (*Id.* at 82) He indicated that he disagreed with the job code identified by Mr. Dachelet, and rather than finding that Plaintiff worked as a laundry worker II under the *Dictionary of Occupational Titles*, Mr. Schmidt would use the code for hand launderer, DOT 361.684.010. (*Id.* at 82-83) He indicated the work as a hand launder was identified as medium in the *Dictionary of Occupational Titles* and "performed at medium" by Plaintiff. (*Id.* at 83) Mr. Schmidt also stated that he "didn't really look carefully at" the position of sorter and agricultural packer because it was then "beyond the 15 year period." (*Id.* at 82-83)

The ALJ asked Mr. Schmidt to "[a]ssume a hypothetical individual of the claimant's age and education with the past work [he] described." (Doc. 9-3 at 83) The ALJ also directed Mr. Schmidt:

> Further assume this individual is capable of occasionally lifting and carrying up to 50 pounds and frequently 25, [can] stand and/or walk for six hours and sit for six to eight hours in an eight hour day with normal breaks, capable of occasional balancing, stooping, kneeling, crouching, crawling, and climbing, frequent gross manipulation with the left upper extremity. No work in extremely cold and/or damp environment.

(*Id.*) Mr. Schmidt opined a worker with these limitations could perform Plaintiff's past relevant work as a hand launderer. (*Id.* at 84) He also believed the worker could perform other medium work such as store laborer, DOT 922.687-058; hospital cleaner, DOT 323.687-010; and industrial cleaner, DOT 381-687-018. (*Id.*) Mr. Schmidt reported that his testimony was consistent with the *Dictionary of Occupational Titles*. (*Id.* at 85)

**D.     The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of December 29, 2010 through her date last insured of December 31, 2015. (Doc. 9-3 at 31) At step two, the ALJ found Plaintiff's severe impairments included: "degenerative disc diseases and history of left shoulder tendonitis." (*Id.*) At step three, the ALJ determined Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled a Listing. (*Id.* at 31-32) Next, the ALJ determined:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except she can occasionally lift and carry up to 50 pounds and frequently 25, stand and/or walk for 6 hours and sit for 6 to 8 hours in an 8-hour workday with normal breaks. The claimant is capable of occasional balancing, stooping, kneeling, crouching, crawling and climbing. She can perform frequent gross manipulation with the left upper extremity. She can perform no work in extremely cold and or damp environment.

(*Id.* at 33) The ALJ indicated Plaintiff "has a limited education and is able to communicate in English." (*Id.* at 38)

The ALJ called a vocational expert to determine the extent to which Plaintiff's "limitations erode the unskilled medium occupational base." (Doc. 9-3 at 39) With the residual functional capacity defined above, the ALJ concluded at step four that Plaintiff "was capable of performing [her] past relevant work as a laundry worker II, hand and sorter/packer." (*Id.* at 38) In addition, the ALJ made alternative findings at step five, finding Plaintiff could perform "other jobs that existed in significant

numbers in the national economy" through her date last insured, such as hand bagger, package sealer machine operator, and laundry checker. (*Id.* at 38, 39) Consequently, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act through her date last insured. (*Id.* at 39)

**DISCUSSION AND ANALYSIS**

Appealing the administrative decision denying her application for benefits, Plaintiff contends the ALJ erred in relying upon the testimony of the vocational expert, Thomas Dachelet, to determine she could perform her past relevant work. (Doc. 15 at 6-12) In addition, Plaintiff asserts the ALJ erred in concluding Plaintiff "is able to communicate in English," which relates to her ability to perform "work as generally performed." (*Id.* at 13)

**A.  English Language Abilities**

Plaintiff asserts the ALJ erred finding she can communicate in English. (Doc. 15 at 13) In addition, Plaintiff argues the ALJs findings regarding her language abilities are insufficient because "[t]he ALJ stated no basis for finding that [she] could speak, understand, read, and write in English." (Doc. 15 at 13) To the extent Plaintiff is can "understand spoken English," she contends this is insufficient to support the ALJ's conclusion that she can communicate in English. (*Id.*, citing *Silveira v. Apfel*, 204 F.3d 1257 (9th Cir. 2000))

In response, Defendant asserts that Plaintiff's argument regarding her ability to communicate in English "is without merit." (Doc. 16 at 12) In addition, Defendant appears to argue any error with this finding must be considered harmless because "Plaintiff cannot plausibly assert that her alleged inability to communicate in English prevents her from performing a job that she already performed for nearly a decade." (*Id.* at 12-13)

1.  Education as a vocational factor

Pursuant to the Regulations, education is a vocational factor for the Commissioner to consider. *See* 20 C.F.R. §404.1564. Claimants are informed that in this factor, the Commissioner considers the following categories the level of education an individual received—whether marginal, limited, or high school and above— as well as a claimant's illiteracy and an inability to communicate in English. *See id.* In particular, "illiteracy" indicates a claimant is unable to "read or write a simple message such as instructions or inventory lists even though the person can sigh his or her name." *Id.*, §404.1564(a)(1).

7

In addition, the Regulations indicate, "[s]ince the ability to speak, read and understand English is generally learned or increased at school, we may consider this an educational factor." *Id.*, §404.1564(a)(5). Thus, the Regulations indicate the administration will "consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do." *Id.*

2. The ALJ's Findings

In evaluating Plaintiff's language abilities, the ALJ concluded Plaintiff "has a limited education and is able to communicate in English." (Doc. 9-3 at 38, citing 20 C.F.R. § 404.1564)

This Court determined substantial evidence supported an ALJ's findings regarding a claimant's language ability where the ALJ noted medical records "specifically noted that the claimant spoke English," the claimant "spoke some English at [the] hearing," including "fully answer[ing] some … questions in English," and the claimant "admitted in her Disability Report form that she preferred Laotian, but could read and understand English and write more than her name in English." *Vongphachanh v. Comm'r of Soc. Sec.*, 2018 WL 1363492 at *4 (E.D. Cal. Mar. 15, 2018). Likewise, the Southern District determined an ALJ's findings that a claimant could communicate in English was supported by substantial evidence where a physician stated she "appeared to understand much of the English dialogue" and "was successfully employed for 18 years in a job that required her to be able to communicate in English." *Truong v. Berryhill*, 2017 WL 3174678 at*10 (S.D. Cal. July 26, 2017).

In contrast, the Ninth Circuit determined an ALJ erred where there was "no express finding that [the plaintiff] was literate in English," and there was "insufficient evidence in the record to determine whether or not [the claimant] is literate in English." *Silveira*, 204 F.3d at 1261-62. Thus, this Court determined that remand was appropriate where an "ALJ's decision made no finding that Plaintiff was literate, and failed to provide any explanation of the finding that Plaintiff had a limited education and could communicate in English." *Garcia v. Astrue*, 2013 U.S. Dist. LEXIS 12758 at*19-20, 186 Soc. Sec. Rep. Service 467 (E.D. Cal. Jan. 30, 2013) (citing *Silveira*, 204 F.3d at 1261-62).

Here, the ALJ does not identify any evidence in the record to support his conclusion that Plaintiff "is able to communicate in English." (*See* Doc. 9-3 at 38) The ALJ also did not make any finding regarding Plaintiff's literacy—or illiteracy— despite her testimony that she could not read and write in English and had her son complete the work history reports. (*See id.* at 52-53) Thus, the ALJ

erred by not making findings—supported by evidence in the record—regarding both Plaintiff's literacy level *and* her ability to communicate in English. *See Demchuk v. Berryhill*, 2017 WL 4310539 at*4 (E.D. Cal. Sept. 28, 2017) ("[a]n ability to verbally communicate in English does not mean that the claimant is literate").

**B.     Past Relevant Work at Step Four**

A claimant has the burden at step four of the sequential analysis to prove that she cannot perform her past relevant work "either as actually performed or as generally performed in the national economy." *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002). The ALJ is not required to make "explicit findings at step four regarding a claimant's past relevant work both as generally performed *and* as actually performed." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001). The Ninth Circuit explained, "[a]lthough the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Id.* at 844.

To evaluate whether a claimant retains the capacity for past relevant work, the Social Security Administration identified three tests:

> 1. Whether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job, e.g., "delivery job," "packing job," etc.
>
> 2. Whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it.
>
> 3. Whether the claimant retains the capacity to perform the functional demands the job duties of the job as ordinarily required by employers throughout the national economy.

SSR 82-61, 1982 SSR LEXIS 31, at *2-3. "The regulations advise an ALJ to first consider past work as actually performed, and then as usually performed." *Pinto*, 249 F.3d at 845.

To determine how a claimant *actually* performed her work an ALJ may consider: "(1) the claimant's own testimony, and (2) a properly completed vocational report." *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002), citing *Pinto*, 249 F.3d at 845, *accord.* SSR 82-61, SSR 82-41; *see also* SSR 82-62, 1982 SSR LEXIS 27, at * 6-7 ("statements by the claimant regarding part work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work"); *Pinto*, 249 F.3d at 845 ("Regulations name two sources of information that may be used to define a claimant's past relevant work as actually performed: a properly completed vocational report,

SSR 82-61, and the claimant's own testimony"). Usually, "the best source for how a job is *generally performed*" in determining the requirements of a claimant's past relevant work is the *Dictionary of Occupational Titles*, and vocational expert testimony may be considered at step four of the analysis. *Pinto*, 249 F.3d at 845-46 (emphasis added).

The ALJ relied upon the testimony of Thomas Dachelet, a vocational expert, to determine at step four that Plaintiff "was capable of performing past relevant work." (Doc. 9-3 at 38) Plaintiff contends these findings are not supported by the record. (*See* Doc. 15 at 7-10)

1. Work as a Laundry Worker II

The ALJ concluded Plaintiff could "perform her past relevant work as a laundry worker II as generally performed in the national economy." (Doc. 9-3 at 38) Plaintiff contends the ALJ erred in making this finding, because the language requirements and physical demands of the position exceed her abilities. (Doc. 15 at 6-7, 13) Plaintiff observes that "English may prove critical to work as generally performed." (*Id.* at 13, citing *Pinto*, 249 F.3d at 846-48)

In *Pinto*, the Ninth Circuit declined to decide whether an ALJ is required to consider a claimant's language skills, including literacy, at step four of the sequential evaluation. *See Pinto*, 249 F.3d at 847 n. 5 (9th Cir.2001). However, the Ninth Circuit explained:

> The ability to communicate is an important skill to be considered when determining what jobs are available to a claimant. Illiteracy seriously impacts an individual's ability to perform work-related functions such as understanding and following instructions, communicating in the workplace, and responding appropriately to supervision. These are all factors that Social Security Ruling No. 96–8P requires an ALJ to consider when determining whether a claimant has the residual functional capacity to perform past relevant work. **Here the ALJ, although noting Pinto's limitation in both his findings of fact and hypothetical to the vocational expert, failed to explain how this limitation related to his finding that Pinto could perform her past relevant work as generally performed**.

*Id.* at 846–847 (emphasis added). Thus, the ALJ must "definitively explain" the impact of a claimant's illiteracy on her ability to perform past relevant work or alternative work. *Id.*, 249 F.3d at 848.

In this case, the ALJ asked the vocational expert to consider "a hypothetical individual of the claimant's age and education with the past relevant work… described." (Doc. 9-3 at 67) Consequently, Mr. Dachelet was directed to considered Plaintiff's education in Mexico and lack of education with the English language. However, the ALJ did not ask the vocational expert any questions regarding the

10

language level requirements of Plaintiff's past relevant work, or whether the positions as generally performed would be available to someone who does not read or write in English.

Previously, this Court determined an ALJ cannot rely upon the testimony of a vocational expert when there is no explanation of how a claimant's language limitation affects the ability to perform work identified by the expert—including past relevant work. *See, e.g., Her v. Astrue*, 2010 WL 328841 (E.D. Cal. 2010); *Singmuongthong v. Astrue*, 2010 WL 3715152 (E.D. Cal. 2010). For example, in *Her v. Astrue*, the ALJ asked the vocational expert to consider the claimant's language limitation when determining the ability to perform past work. *Id.*, 2010 WL 328841 at *6. Though the claimant's past work required Language Level 1, the vocational expert affirmed the availability of past work, without any discussion concerning language requirements. *Id.* at *5-6. As Defendant does here, it was argued that the claimant's alleged language limitations were irrelevant because the claimant performed her past work despite her language limitations. *Id.* at *6. The Court explained that "[s]uch a statement is not persuasive evidence to support a deviation from a DOT requirement. Although a claimant is not per se disabled if he or she is illiterate, the ALJ must definitively explain why he or she deviates from the DOT's language requirements when finding that a claimant can perform her past relevant work." *Id.* at *6. (citations and quotations omitted).

As in *Her*, the record fails to establish that Plaintiff would be able to perform her past relevant work as generally performed, as the vocational expert testified. Mr. Dachelet did not explain how a deviation from the language requirements under the *Dictionary of Occupational Titles* was appropriate, or whether the position could be performed by someone who is unable to read or write in English. Consequently, the testimony of the vocational expert has no evidentiary value for the ALJ's conclusion that Plaintiff is able to perform her past relevant work as a laundry worker II as generally performed and defined by the *Dictionary of Occupational Titles*.

2. Work as a Sorter/Packer

Plaintiff asserts the ALJ erred in finding she can perform the work of "sorter/packer," both because it is not relevant and it is a composite job that "lacks a generally performed counterpart" in the *Dictionary of Occupational Titles*. (Doc. 15 at 7-8)

///

a. *Legal Relevancy*

In general, past relevant work is work performed in the last 15 years that lasted long enough to learn it, and was substantial gainful employment. 20 C.F.R. § 404.1560(b)(1). For disability insurance benefits actions, the 15-year period is measured as the period immediately preceding the claimant's date last insured. *See* Social Security Ruling[3] ("SSR") 82-62, 1982 WL 31386 at *2 ("In those title II cases in which the claimant's disability insured status was last met prior to adjudication, the work performed for the 15-year period preceding the date the title II disability insured status requirement was last met would generally be considered relevant, since the claimant's capacity for [substantial gainful activity] as of that date represents a critical disability issue.") The Commissioner generally does not consider older work to be past relevant work because a "gradual change occurs in most jobs so that after 15 years it is no longer realistic to expect that skills and abilities acquired in a job done then continue to apply." See 20 C.F.R. § 404.1565(a).

Plaintiff observes that her date last insured was December 31, 2015, and argues that the relevant period for her past relevant work is January 1, 2001 through December 31, 2015. (Doc. 15 at 7-8; *see also* Doc. 9-3 at 31) Because she last worked as a shorter/packer in September 2000, Plaintiff contends the work "falls outside the boundary of relevance." (*Id.* at 8; *see also* Doc. 17 at 2)

Significantly, however, the 15-year period is a guide, not a bright-line rule. See 20 C.F.R. § 404.1565(a) ("The 15- year *guide* is intended to insure that remote work experience is not currently applied") (emphasis added); SSR 82-62, 1982 WL at 31386 at *2 ("[I]n some cases worked performed prior to the 15-year period may be considered as relevant when a continuity of skills, knowledge, and processes can be established between such work and the individual's more recent occupations"); *see also Son Thi Khuu v. Apfel,* 1999 U.S. App. LEXIS 2629 at *2 (9th Cir. Feb. 18, 1999) (finding "nothing in SSR 82-62, the Social Security Act, or the regulations prohibits the Commissioner from considering [a claimant's] past unskilled labor performed more than fifteen years before her application for benefits"); *Smith v. Sec'y of Health & Human Serv.*, 893 F.2d 106, 109 (6th Cir. 1989) (observing

---

[3] Although Social Security Rulings issued by the Commissioner to clarify regulations and policies do not have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

the 15-year period is only a guide); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (noting the 15-year period creates only a presumption).

Moreover, the Ninth Circuit determined the Commissioner did not err in denying benefits based upon the claimant's ability "to perform her past relevant work … despite the fact that she performed that work in Vietnam more than fifteen years before her application for benefits" where the work "was unskilled and unlikely to have changed significantly overtime." *Son Thi Khuu,* 1999 U.S. App. LEXIS 2629 at *2. Likewise, Plaintiff's work as a sorter/packer was classified as "unskilled" by the vocational expert. (Doc. 9-3 at 67) In addition, there is no showing by Plaintiff that the work was likely to have changed. Thus, the Court finds Plaintiff fails to demonstrate the sorter/packer position was not legally relevant.

      b.  As "actually" performed

Based upon the testimony of Mr. Dachelet, The ALJ concluded Plaintiff could "perform her past work as a sorter/packer as she actually performed it." (Doc. 9-3 at 38) Plaintiff argues this was an error, because sorts and packers "do not sit" and she lacks the ability to stand for eight hours. (Doc. 15 at 9-10, emphasis omitted)

The Ninth Circuit determined an ALJ erred in finding a claimant could perform past relevant work as *actually* performed when the limitations in the residual functional capacity exceeded the job requirements identified by a claimant in her vocational report and testimony. *See Pinto*, 249 F.3d at 845. In *Pinto*, the claimant completed a vocational report and testified that a past position required her to "stand for the entire eight-hour shift packing and lifting boxes," with "constant "bending and stooping." *Id.*, 249 F.3d at 845. The Court observed that "[n]othing was introduced into the record to contradict this testimony, and the ALJ did not make any adverse findings." *Id.* Nevertheless, the ALJ asked the vocational expert to consider an individual who "could stand and walk 6 hours," and found she could "stoop… only occasionally." *Id.*, 249 F.3d at 843. Given the physical job requirements identified by Plaintiff, the Court determined the ALJ's finding that the claimant "could continue her past work as actually performed" was contradicted by the vocation evidence provided by Plaintiff— noting in particular that her ability to stoop "'[o]cassionally' does not mean 'constantly.'" *Id.*, 249 F.3d at 845.

13

Plaintiff testified regarding the physical requirements of her work as a packer/sorter and provided a work history report to the Administration. (Doc. 9-3 at 54-55, 57; Doc. 9-8 at 18) She testified the position of sorting and packing dry fruit at Premier Valley Foods required her to lift "[m]aybe ten pounds." (Doc. 9-3 at 57) In the work history report, Plaintiff indicated she was required to stand for eight hours as a packer/sorter. (Doc. 9-8 at 18) No evidence was introduced that contradicted the report that she was required to stand for eight hours, and the ALJ did not find the report was not "properly completed." Although the vocational expert testified he reviewed Plaintiff's file regarding her work history (Doc. 9-3 at 67), there is no indication in the decision that the ALJ considered the physical demands identified in Plaintiff's testimony or her work history report. However, the ALJ concluded Plaintiff could only "stand and/or walk for 6 hours" in the residual functional capacity. (Doc. 9-3 at 33) Thus, the conclusion that Plaintiff could perform her past work as a sorter/packer as actually performed conflicts with the vocational history report and information provided by Plaintiff. As in *Pinto*, the Court finds the ALJ's conclusion that Plaintiff could perform the work of a sorter/packer as *actually* performed is unsupported by the vocational record.

    *c.*  As "generally" performed

The ALJ concluded also that Plaintiff could "perform her past work as a sorter/packer as … generally performed in the national economy." (Doc. 9-3 at 38) Plaintiff argues this was an error because the vocational expert testified the sorter/packer position a composite job, which "lacks a DOT corollary making the 'generally performed' aspect of past relevant work irrelevant." (Doc. 15 at 8)

Indeed, as Plaintiff argues, courts throughout the Ninth Circuit have determined when "the job at issue [i]s a composite job, the ALJ [is] precluded from finding that plaintiff could perform the position as it was generally performed in the national economy." *Lepage v. Berryhill*, 2017 WL 4539272 *2 (E.D. Cal. Oct. 11, 2017); *Cook v. Colvin,* 2015 WL 162953 at *7 (C.D. Cal. Jan. 13, 2015) ("When a job is 'composite'—that is, it has significant elements of two or more occupations and therefore has no counterpart in the DOT—the ALJ considers only whether the claimant can perform his past relevant work as actually performed"); *Jones v. Colvin*, 2015 WL 5964900 at *10 (N.D. Cal. Oct. 13, 2015) ("When a claimant's past relevant work is a composite of two or more separate occupations, he or she does not have past relevant work as generally performed in the national economy." (citing

14

Program Operations Manual System, § DI 25005.020(B)). Thus, the Court finds the ALJ erred in finding Plaintiff could perform the composite position of sorter/packer as "generally" performed.

3. Conclusion

The ALJ's step four findings that Plaintiff can perform her past relevant work are not supported by substantial evidence in the record. Thus, the Court must determine whether the errors by the ALJ were harmless in light of the alternative findings made at step five of the sequential evaluation.

**C. ALJ's Step Five Findings**

At step five the burden shifts to the Commissioner to show that Plaintiff can perform other substantial gainful activity and a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984); *see also Osenbrock v. Apfel,* 240 F.3d 1157, 1162 (9th Cir. 2001) (discussing the burden shift at step five). To make this determination, the ALJ may rely upon job descriptions in the *Dictionary of Occupational Titles*, or the ALJ may call a vocational expert "to testify as to (1) what jobs the claimant, given his or her functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999); *see also* Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704 at *2 ("In making disability determinations, we rely primarily on the DOT . . . for information about the requirements of work in the national economy.")

The ALJ called a vocational expert "[t]o determine the extent to which [Plaintiff's] limitations erode the unskilled medium occupational base." (Doc. 9-3 at 39) Specifically, the ALJ instructed Mr. Dachelet to consider "a hypothetical individual of the claimant's age and education with the past relevant work… described." (Doc. 9-3 at 67) In addition, the ALJ stated:

> Further assume this individual is capable of occasionally lifting and carrying up to 50 pounds and frequently 25, stand and/or walk for six hours, and sit for eight hours in an eight hour day with normal breaks, capable of occasional balancing, stooping, kneeling, crouching, crawling, and climbing, frequent gross manipulation with the left upper extremities, no work at extremely cold and/or damp environment.

(*Id.* at 67-68) Mr. Dachelet responded the hypothetical person could perform "medium, unskilled jobs" including: hand bagger, DOT 920.687-014; package sealer machine operator, DOT 920.684.074; and laundry checker, DOT 369.687-014. (*Id.*)

According to Plaintiff, the ALJ failed to address conflicts between the testimony of the

vocational expert—who opined Plaintiff could work with the residual functional capacity identified by the ALJ— and the physical requirements of these jobs as defined by the *Dictionary of Occupational Titles*. (Doc. 15 at 11-12)

    1.    Conflicts with the *Dictionary of Occupational Titles*

Pursuant to SSR 00-4p, occupational evidence provided by a vocational expert "generally should be consistent with the occupational information supplied by the DOT." *Id.*, 2000 WL 1898704 at *2. When there is a conflict between the testimony of the vocational expert and the *Dictionary of Occupational Titles*, "the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert testimony] to support a determination or decision about whether the claimant is disabled." *Id.* Further, SSR 00-4p provides:

> At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the [vocational expert] evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the [vocational expert] is reasonable and provides a basis for relying on the [vocational expert] testimony rather than on the DOT information.

*Id.* Accordingly, the Ninth Circuit determined an ALJ must inquire "whether the testimony conflicts with the *Dictionary of Occupational Titles*," and may only rely upon conflicting expert testimony when "the record contains persuasive evidence to support the deviation." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007); *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

    *a.*    *Whether there are conflicts*

The ALJ determined that through Plaintiff's date last insured, she was able to perform medium work with postural limitations, that included "occasional balancing, stooping, kneeling, crouching, crawling and climbing." (Doc. 9-3 at 33) Based upon the vocational expert's testimony, the ALJ concluded at step five that Plaintiff could perform the requirements of unskilled medium work including hand bagger, DOT 920.687-014; package sealer machine operator, DOT 920.684.074; and laundry checker, DOT 369.687-014. (*Id.* at 39) The ALJ asserted, "Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." (*Id.*) However, Plaintiff argues there are, in fact, conflicts between the testimony of Mr. Dachelet and the *Dictionary of Occupational Titles*. (Doc. 15 at 11-12)

Plaintiff observes that under the *Dictionary of Occupational Titles*, two of the positions identified by the vocational expert "require frequent stooping." (Doc. 15 at 11, citing DOT 920.687-014 and DOT 920.685-074) Indeed, the *Dictionary of Occupational Titles* indicates that stooping is an activity that occurs "frequently" and "[e]xists from 1/3 to 2/3 of the time" for the positions of hand bagger and package sealer machine operator. DOT 920.687-014, 1991 WL 687964 (hand bagger); DOT 920.685-074, 1991 WL 687941 (package sealer machine operator). In contrast, activities that occur "occasionally," exist "up to 1/3 of the time." *See* DOT 920.685-074, 1991 WL 687941. Because the ALJ limited Plaintiff to *occasionally* stooping— and these positions require doing so *frequently*— the Court finds the vocational expert's testimony conflicted with the job descriptions provided in the *Dictionary of Occupational Titles* for the positions of hand bagger and package sealer machine operator.

            *b.*    *Whether the record supports the deviations*

When there is a conflict between the testimony of a vocational expert and the *Dictionary of Occupational Titles*, the Court may rely upon the testimony only when "the record contains persuasive evidence to support the deviation." *Massachi*, 486 F.3d at 1153. Importantly, there is no indication in the record that the ALJ was aware of the conflict between Plaintiff's limitations with stooping and the requirements of the jobs as defined by the *Dictionary of Occupational Titles*.

Further, the vocational expert did not testify as to the basis of his belief that Plaintiff could perform the jobs identified with postural limitations, including occasional stooping. As a result, the ALJ was unable to resolve the conflict between the two vocational resources, as is required by the Ninth Circuit. *See Johnson*, 60 F.3d at 1435; *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) ("in order for the ALJ to rely on a job description in the *Dictionary of Occupational Titles* that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation"). Because the ALJ did not address the apparent conflicts, and the vocational expert did not explain his reasoning, the record cannot support the deviation.

    2.    Plaintiff's Language Abilities at Step Five

Finally, the Court notes the ALJ's findings regarding Plaintiff's limited education and ability to communicate in English were made as part of the step five determination. As discussed above, a

claimant's educational level and literacy are relevant vocational factors. Given the ALJ's failure to make proper findings regarding Plaintiff's ability to communicate in English and her ability to read and write in English, the ALJ failed to properly analyze Plaintiff's language ability at step five.

**D.     Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Based upon the record, the Court is unable to determine whether Plaintiff can perform her past relevant work or other work existing in significant numbers in the national economy. The ALJ failed to support his conclusion that Plaintiff is able to communicate in English with evidence in the record. In addition, the ALJ did not make specific findings regarding Plaintiff's literacy, despite evidence that she is unable to read or write in English, and did not question the vocational expert regarding these factors. Further, there are apparent conflicts between the testimony of the vocational expert and the *Dictionary of Occupational Titles*. Accordingly, a remand for further proceedings is appropriate in this matter. *See Zavalin v. Colvin,* 778 F.3d 842, 848 (9th Cir. 2015) (remand is appropriate where the Court "cannot determine [from the record] whether substantial evidence supports the ALJ's step-five finding"); *see also Garcia,* 2013 U.S. Dist. LEXIS 12758 at*19-20 (finding remand was warranted where the ALJ "made no finding that Plaintiff was literate, and failed to provide any explanation of the finding that Plaintiff had a limited education and could communicate in English").

## **CONCLUSION AND ORDER**

For the forgoing reasons, the Court finds the ALJ erred in his analysis of Plaintiff's language abilities, and failed to set forth findings supported by substantial evidence at steps four and five of the sequential evaluation. Therefore, the ALJ's decision cannot be upheld by the Court. *See Sanchez*, 812 F.2d at 510.

Accordingly, the Court **ORDERS**:

1. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

2. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Mercedes Morales De Romero and against Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **January 3, 2019**  /s/ Jennifer L. Thurston
UNITED STATES MAGISTRATE JUDGE